UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

In re:

DARRELL WAYNE MARTIN

        Debtor                                    CASE NO. 04-35746

JAMES FITZPATRICK                           CHAPTER    7
KENTUCKY FARM BUREAU INSURANCE
COMPANY

        Plaintiffs
vs.

DARRELL WAYNE MARTIN

        Defendant                            Adv. Proc. No. 04-03297

**MEMORANDUM-OPINION**

      THIS ADVERSARY PROCEEDING is before the Court after the conclusion of a trial on the merits of the cause of action brought by Plaintiffs, James Fitzpatrick ("Fitzpatrick") and Kentucky Farm Bureau Insurance Company ("KFBIC"), against the Defendant, Darrell Wayne Martin, under 11 U.S.C. §523(a)(6). For the reasons set forth below, the Court finds that Defendant intentionally damaged Plaintiff James Fitzpatrick's truck and that Defendant, therefore, is liable to Plaintiffs for repayment of $3,704.36 in damages incurred by Plaintiffs as a result of Defendant's action, plus interest, which liability is nondischargeable under 11 U.S.C. §523(a)(6). By virtue of 28 U.S.C. § 157(b)(2)(I) this is a core proceeding. The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052.

1

**<u>Findings of Fact</u>**

Defendant filed his Chapter 7 bankruptcy petition on September 9, 2004. The Section 341 Meeting of Creditors was held on October 19, 2004, and the Chapter 7 Trustee reported to the Court that there were no assets to administer for the benefit of the creditors of Defendant's bankruptcy estate.

On October 1, 2004, Plaintiffs filed their complaint initiating this Adversary Proceeding. Specifically, Plaintiffs allege under 11 U.S.C. §523(a)(6) that Defendant on May 20, 2002, intentionally damaged Plaintiff Fitzpatrick's 1994 Chevrolet C150 truck (the "Truck") by scratching the Truck's custom paint scheme in several locations. Defendant filed his Answer on November 1, 2004, essentially denying Plaintiffs' allegations.

The Court conducted a trial upon the merits on March 15, 2005. At the close of the trial, the Court ordered Defendant's counsel to provide the Court with a videotape of a child visitation hearing held May 20, 2002 in Jefferson County Family Court. That videotape was entered into evidence following supplemental hearings held on March 22, 2005 and April 11, 2005.

The only fact in dispute here is whether Defendant damaged the Truck. Plaintiffs' witnesses and Defendant's witnesses have provided diametrically opposed testimony concerning the damage to the Truck. Plaintiffs submitted testimony of Frank Reinhart ("Reinhart") and Emily Ann Campschaefer ("Campschaefer"), who both stated unequivocally that they saw Defendant in the parking garage at Seventh and Jefferson Street (the "Parking Garage") in close proximity to the Truck with something shiny in his hand immediately before they discovered the damage to the Truck. Not only does Defendant deny damaging the Truck, but he and another witness, Cheryl Ann Combs ("Combs"), testified that they were never in the Parking Garage on the date in question.

Because Reinhart and Campschaefer are intimately acquainted with Defendant and Combs and Defendant has not defended on grounds of mistaken identity, it seems clear to the Court that one set of witnesses has committed perjury.[1] To ferret out the true story, it is necessary to recount briefly the witnesses' accounts of the events and other facts immediately preceding and following Reinhart's and Campschaefer's alleged encounter with Defendant in the Parking Garage.

---

[1] Defendant is the father of Campschaefer's child. Campschaefer is Reinhart's girlfriend. Combs is Defendant's girlfriend.

At 10:20 a.m., on May 20, 2002, a hearing was held in Jefferson County Family Court, Kampschaefer v. Martin, Case No. 93-FP-003182 (the "Family Court Case"), regarding visitation with respect to Kampschaefer's daughter by Defendant. Just before that hearing, Reinhart, Campschaefer, Defendant and Combs encountered each other outside the courtroom, at which time Campschaefer informed a nearby Child Protective Services officer that Combs was accompanying Defendant in violation of a domestic violence "no contact" order. According to Reinhart and Campschaefer, Defendant and Combs then left the courthouse without attending the hearing. Defendant testified, however, that he in fact did *appear before the judge* and that he and Combs left the courthouse *after* the conclusion of the hearing.

The May 20, 2002 hearing concluded at around 10:25 a.m. Immediately after the hearing, Reinhart and Campschaefer returned to the second floor of the Parking Garage, where Reinhart had parked the Truck.[2] Reinhart testified that as he approached to within eight to ten car lengths of the Truck, he spotted Defendant by the side of the Truck. Reinhart states that he made eye contact with Defendant and noticed a shiny, knifelike object in Defendant's hand. He also states that Defendant ran to, jumped into, and sped off in, a Toyota station wagon with Combs. Campschaefer testified that she saw Defendant run away from the Truck and get into a vehicle with Combs and drive off.

Contradicting Reinhart's and Campschaefer's testimony, Defendant and Combs testified that, after the hearing, they returned to Combs' car, which was parked at the Long John Silver's Restaurant on Seventh Street, and went *directly* home. They testified that around twenty to thirty minutes after they arrived home, Reinhart and Campschaefer drove up to their home and yelled at them about child support.

Reinhart and Campschaefer both testified that the Truck was undamaged immediately before the May 20, 2002 hearing and that they discovered that it was damaged immediately after their encounter with Defendant and Combs in the Parking Garage. Reinhart filed a Criminal Complaint against Martin for the damage to the Truck. That Complaint was generated at 11:18 a.m. on May 20, 2002, less than an hour after the May 20, 2002 hearing.

Based on the testimony of the witnesses and the entire record as a whole, the Court finds

---

[2]Reinhart was in the process of purchasing the Truck from Plaintiff Fitzpatrick and had permission to drive the Truck pending the purchase.

Plaintiffs' version of the facts more credible than Defendant's and finds that Defendant intentionally scratched the Truck. In particular, the Court notes that Reinhart and Campschaefer each presented a candid, persuasive demeanor. By stark contrast, both Defendant and Combs were vague, evasive and argumentative. Even more telling, however, is the transcript of the May 20, 2002 hearing, in which it is clear that Defendant did not *appear before the judge* despite Defendant's sworn testimony to the contrary. Furthermore, Reinhart filed his Criminal Complaint regarding the damage to the Truck within a matter of minutes of the conclusion of the May 20, 2002, an action that is entirely consistent with his and Campschaefer's version of events.

Finally, Plaintiffs provided proof that the damage to the Truck required that it be repainted, causing Plaintiffs to incur $3,704.36 in damages for the paint job and rental of a temporary replacement vehicle. Defendant did not dispute Plaintiffs' proof of damages.

## Conclusions of Law

Plaintiffs seek damages and a determination that those damages are nondischargeable under 11 U.S.C. §523(a)(6). 11 U.S.C. §523(a)(6) states as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
> . . .
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

To establish that a debt is nondischargeable under 11 U.S.C. §523(a)(6), a plaintiff must prove that the debtor not only intended the act that caused the harm, but intended the harm. *See Kawaauhau v. Geiger, 523 U.S. 57, 118 S.Ct. 974 (1998)*.

In this case, Defendant clearly intended both the act and the harm. The Court has found as a factual matter that Defendant intentionally scratched the Truck's paint. It would, therefore, defy logic to conclude that the Defendant did not intend to harm the Truck. By their very nature, scratches inflicted to a motor vehicle's custom paint job diminish the value of the motor vehicle. Accordingly, the Court concludes that Defendant is liable to Plaintiffs for the damages resulting from his malicious act and that such damages represent a nondischargeable debt under 11 U.S.C. §523(a)(6).

4

The Court will enter a separate Order determining that Defendant's particular indebtedness owed to Plaintiffs is nondischargeable. *Fed. R. Bankr. P. 9021*.[3]

---

[3] Plaintiffs seek interest on the debt in question, calculated at varying rates from the date of damage to the date of judgment and from the date of judgment until paid. The Court believes it fair to award Plaintiffs interest on the debt at the Federal Judgment Rate in effect on May 20, 2002, accruing from May 20, 2002 until the date on which the debt plus all accrued interest is fully satisfied. Plaintiffs also seek attorney fees and punitive damages. The Court declines to award such fees or punitive damages.